IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
(HEARD IN KNOXVILLE)

| | | |
|---|---|---|
| WILLIAM J. SNYDER,_____ | ) | FOR PUBLICATION |
| | ) | **Filed: September 2, 1997** |
| Plaintiff/Respondent, | ) | Certified Question of Law from the |
| | ) | United States |
| | ) | District Court for the Eastern |
| v. | ) | District of Tennessee, Northeastern |
| | ) | Division |
| LTG LUFTTECHNISCHE GmbH; | ) | |
| LTG TECHNOLOGIES, INC.; and | ) | |
| HSM PRESSEN-GmbH, | ) | No. 01-S-01-9607-FD-00143 |
| | ) | |
| Defendants/Petitioners, | ) | |
| | ) | Hon. Dennis H. Inman, Magistrate |
| THE TRAVELERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Intervenor. | ) | |

**FILED**

September 2, 1997

Cecil W. Crowson
Appellate Court Clerk

For Plaintiff-Respondent:

Earl R. Booze
Herrin, Booze & Rambo
Baker, McReynolds, Byrne,
Johnson City, Tennessee

Bill Hampton
Hampton & Street
Elizabethton, Tennessee

_____
McKee

For Defendants/Petitioners:

John A. McReynolds, Jr.

O'Kane, Shea & Townsend
Knoxville, Tennessee

Thomas F. Mink, II
Mink & Blair
Nashville, Tennessee

For the Intervenor:

J. Paul Coleman
Herndon, Coleman, Brading &

Johnson City, Tennessee

DROWOTA, J.

QUESTIONS CERTIFIED

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee,[1] this Court has accepted two questions certified to us by the United States District Court for the Eastern District of Tennessee. The questions are as follows:

1. Whether products liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort may introduce evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendants' product proximately caused or contributed to the plaintiff's injuries.

2. If "no," of what effect is Tenn. Code Ann. § 29-28-108?

---

[1] "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Sup. Ct. R. 23, Sec. 1.

As explained below, the answer to the first certified question is that products liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort may introduce relevant evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendants' product was the cause in fact of the plaintiff's injuries. The jury may consider all evidence relevant to the actions of the employer with respect to the defendants' product in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants. However, in making that determination, the jury may not assess fault against the employer. Our answer to the first question makes it unnecessary to reach the second one.

## FACTS AND PROCEDURAL BACKGROUND

In this products liability action, the plaintiff, William Snyder, was employed by Sara Lee Knit Products as a technician at its plant in Mountain City. Sara Lee used presses in its plant to compress cotton into bales. These presses, called "cotton balers," collected cotton in the top portion of the machine, which then vertically compressed the cotton into the lower half of the machine. A ram would then move horizontally forward to press the cotton into a bale.

On February 1, 1992, the plaintiff was working on a cotton baler in his employer's plant that had stopped in mid-cycle. Without first disconnecting power to the baler, the plaintiff stuck his arm into the machine to remove loose cotton covering a protective switch. The plaintiff's arm was inserted into the machine through an opening where a metal panel or barrier would have normally been bolted. While the plaintiff's arm was inside the machine, the machine engaged, causing injury to the plaintiff's arm. According to the plaintiff, he had not removed the metal panel and did not know who had. However, he admits to removing and replacing it on previous occasions.

On December 3, 1992, the plaintiff filed a products liability suit against LTG Lufttechnische GmbH, a German corporation, and LTG Technologies, Inc., a South Carolina corporation. Plaintiff alleged that these defendants were the manufacturers and sellers of the baler that injured him. In turn, these defendants named HSM Pressen GmbH, a German corporation, as a party, claiming that it was the manufacturer of the baler at issue. The Travelers Insurance Company intervened to assert its subrogation claim for the amount paid to the plaintiff as the workers' compensation carrier for the plaintiff's employer, Sara Lee. [2]

_____

[2]The extent, if any, to which an employer's subrogation interest in recovering workers' compensation benefits paid to an injured employee who brings a tort claim against a third party is affected by Tennessee's adoption of comparative fault will be dealt with in our forthcoming opinion in Castleman v. Ross Engineering Inc., __ S.W.2d __ (Tenn. 1997).

The plaintiff's suit seeks recovery for personal injury based upon strict liability in tort, negligence and breach of warranty. Plaintiff claims that the defendants negligently designed and manufactured the baler, negligently failed to warn of the machine's dangers, and are liable for breach of warranties.

In response, the defendants insist that the cotton baler in question was state of the art and that it was neither defective nor unreasonably dangerous when it left their control.[3] They also claim that the machine was not defectively designed. Rather, the defendants assert that the plaintiff's employer altered or failed to maintain the machine by removing the bolted metal panel through which the plaintiff stuck his arm, thereby constituting a subsequent intervening act of negligence that caused the plaintiff's injuries. Thus, according to the defendants, it was the plaintiff's employer's conduct that rendered the baler defective or unreasonably dangerous. See Tenn. Code Ann. § 29-28-108 ("If a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable."). The defendants further maintain that

_____

[3]Tenn. Code Ann. § 29-28-105 provides that a "manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller. In making this determination, the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market . . . is applicable." Tenn. Code Ann. § 29-28-105(a), (b).

removing the protective panel from the machine and attempting maintenance and repairs without first disconnecting the power violated safety provisions of the machine's operating and maintenance instructions.

An order certifying to this Court the two questions set forth above was issued by the United States District Court for the Eastern District of Tennessee at Greenville. The district judge opined that this Court's decision in Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996) could be construed to preclude the defendants from presenting proof that the cause of the plaintiff's injuries was the acts or omissions of his employer. We entered an order accepting certification of the questions posed and set this cause for oral argument.

ANALYSIS

In McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), we adopted a system of modified comparative fault. In describing this system, we stated that "so long as a plaintiff's negligence remains less than the defendant's negligence, the plaintiff may recover; in such a case, the plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff." McIntyre, 833 S.W.2d at 57. At the time we decided McIntyre, we recognized that the decision would have far reaching implications and that

6

working through the many affected principles would take time. McIntyre, 833 S.W.2d at 57 ("We recognize that today's decision affects numerous legal principles surrounding tort litigation. For the most part, harmonizing these principles with comparative fault must await another day.").

Four years after McIntyre was decided, the case of Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), a case similar to the present one, provided us with our first opportunity to decide whether under Tennessee's modified comparative fault system a defendant in a products liability case could assert that the plaintiff's immune employer caused or contributed to the plaintiff's injuries.[4] In Ridings, the plaintiff was injured when he fell from a ladder during the course and scope of his employment. Id. at 80. He filed a third-party tort action against the manufacturer and distributor of the ladder, alleging negligence and strict liability. Id. As in the present case, the defendants in Ridings sought to present proof that the plaintiff's employer caused or contributed to his injuries.[5] Thus, the issue in Ridings was "whether the defendants . . . [could] assert as an affirmative defense that the plaintiff's

---

[4]Employers are immune from tort liability due to the exclusive remedy provision of the workers' compensation law. Tenn. Code Ann. § 50-6-108(a).

[5]In McIntyre, we stated that "defendants called upon to answer allegations [of] negligence be permitted to allege, as an affirmative defense, that a non-party caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this non-party the percentage of the total negligence for which he is responsible." McIntyre, 833 S.W.2d at 58.

employer caused or contributed to the plaintiff's injuries and damages, notwithstanding that the injuries alleged were sustained in the course and scope of the plaintiff's employment which was covered by the workers' compensation law of Tennessee." Id. In other words, could the employer, who was immune from tort liability by virtue of the workers' compensation law, be included in the apportionment of fault in the employee's third-party tort action.

The defendants in Ridings argued that fault could be apportioned to the plaintiff's employer and that their liability could be decreased accordingly, without the imposition of legal liability upon the employer. Id. at 81. The defendants also claimed that excluding the plaintiff's employer from those persons to whom fault could be attributed violated the principle stated in McIntyre that a party be held liable only for the percentage of the plaintiff's damages caused by that party. See McIntyre, 833 S.W.2d at 57. In response, the plaintiff in Ridings argued that "allowing the jury to attribute fault to the plaintiff's employer, against whom the plaintiff cannot maintain an action for damages, violates the McIntyre principle that the 'plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.'" Ridings, 914 S.W.2d at 80 (quoting McIntyre, 833 S.W.2d at 57). Thus, both parties in Ridings presented arguments based upon notions of

fairness consistent with their interpretation of Tennessee's system of comparative fault.

This Court rejected the defendants' position in Ridings, stating that it was "not consistent with the Tennessee doctrine of comparative fault." Ridings, 914 S.W.2d at 81. We did so after carefully considering the policy underlying the workers' compensation system (i.e., liability imposed upon the employer without regard to the employer's negligence in exchange for a limit on damages and tort immunity) and after examining how other jurisdictions have dealt with the same issue. See Ridings, 914 S.W.2d at 81-82. We determined that the fairness concerns underlying McIntyre compelled the result that fault be apportioned only to those persons against whom the plaintiff had a cause of action in tort. Specifically, we held that "[s]ince the plaintiff's employer cannot be made a party to the plaintiff's tort action for personal injuries sustained in the course and scope of his employment, the rationale of McIntyre . . . will not permit fault to be attributed to the plaintiff's employer." Id. at 82. Thus, we concluded that "the plaintiff's right to recover on allegations of negligence and strict liability [must be] determined without reference to the employer's conduct." Id. at 84.

In the present case, the defendants maintain that <u>Ridings</u> was wrongly decided and should be reversed. They claim that <u>Ridings</u> is not consistent with <u>McIntyre's</u> objective of fairness because they will have to bear whatever percentage of fault the jury would have accessed against the plaintiff's employer. We carefully considered and rejected this same argument in <u>Ridings</u>, stating that

> [t]he rationale of <u>McIntyre</u> postulates that fault may be attributed only to the persons against whom the plaintiff has a cause of action in tort. . . . Since the plaintiff's employer cannot be made a party to the plaintiff's tort action for personal injuries sustained in the course and scope of his employment, the rationale of <u>McIntyre</u>, both as to principle and procedure, will not permit fault to be attributed to the plaintiff's employer.
>
> * * *
>
> Limiting the parties to whom fault may be attributed to those subject to liability, accomplishes the policy objective of fairness and efficiency.

<u>Ridings</u>, 914 S.W.2d at 81-83. <u>See</u> <u>also</u>, <u>Owens v. Truckstops of America</u>, 915 S.W.2d 420, 428 (Tenn. 1996) ("[T]he doctrine of comparative fault contemplates that the apportionment of fault is limited to those against which the plaintiff has a cause of action.").

There is no question that the Court in Ridings considered the "fairness" arguments advanced here by the defendants and made a policy decision to leave immune employers out of the assessment of fault. We thus decline the defendants' invitation to reverse Ridings or otherwise depart from the rule adopted in that decision.

However, before leaving Ridings, we are inclined to add that our decision in that case can best be understood when considered in the analytical context in which the case came to the Court. The defendants in Ridings, like the defendants here, wanted the jury to assess fault against the employer by arguing that the employer's actions were the proximate, or legal, cause of the plaintiff's injuries. Of course, the employer cannot be found to be the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability under Tenn. Code Ann. § 50-6-108(a). By enacting Tenn. Code Ann. § 50-6-108(a), the legislature has already determined that for policy reasons the employer may not be the legal cause of the plaintiff's injuries.

This is not to say, however, that the employer cannot be found by the trier of fact to have been the cause in fact of the plaintiff's injuries.[6] If the

---

[6] The distinction between cause in fact and proximate, or legal, cause is not merely an exercise in semantics. The terms are not interchangeable. Although both cause in fact and proximate, or legal, cause are elements of negligence that the plaintiff must prove, they are very different concepts. Ridings, 914 S.W.2d at 83; Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993). Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred

11

rule were otherwise, the defendants would effectively be precluded from presenting a defense. A defense that the product was not defective or unreasonably dangerous when it left the defendants' control would not be credible unless the defendants were permitted to introduce evidence as to what actually happened to the product leading up to the incident that injured the plaintiff. Excising the employer from that discussion would be tantamount to drawing a line which would make discussion of the case to be tried difficult, if not impossible.[7] The end result would be that the jury would not hear evidence of the true facts surrounding the product that caused the plaintiff's injuries but, nonetheless, be asked to determine fault and hence liability for damages. Prohibiting the introduction of such evidence could result in a defendant, who was not the cause in fact of the plaintiff's injuries, being required to pay for the harm anyway.

## CONCLUSION

---

but for that conduct. Kilpatrick, 868 S.W.2d at 598. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. Id. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and "our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient." Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997); George v. Alexander, 931 S.W.2d 517, 521 (Tenn. 1996); Kilpatrick, 868 S.W.2d at 598; Smith v. Gore, 728 S.W.2d 738, 749 (Tenn. 1987).

[7]For example, in the present case, the defendants would be restricted from presenting evidence that the plaintiff's employer altered, changed, or improperly maintained the cotton bailer that injured the plaintiff by removing the metal panel that covered the area into which the plaintiff stuck his arm.

12

In light of the foregoing discussion, our answer to the first certified question is that products liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort may introduce relevant evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendant's product was the cause in fact of the plaintiff's injuries. Put another way, the jury may consider all evidence relevant to the event leading up to the incident that injured the plaintiff. The defendants may not, however, ask the jury to assign fault to the employer. That is, the defendants may not take the legal position that the employer's actions were the legal cause of the plaintiff's injuries. The jury should be instructed that it may consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants. Also, the jury should be instructed that it may not, in making that determination, assess fault against the employer. Finally, the trial judge should give an instruction that lets the jury know that the employer's legal responsibility will be determined at a later time or has already been determined in another forum.

The clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed to the defendants.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.,
Reid, Birch, Holder, J.J.